(No. 71963.—

MICHAEL HUTCHINGS, Appellee, v. EUGENE BAUER *et al.*, Appellants.

*Opinion filed July 30, 1992.—Rehearing denied October 5, 1992.*

FREEMAN, J., joined by CUNNINGHAM, J., specially concurring.

MILLER, C.J., dissenting.

CLARK, J., joined by MILLER, C.J., and BILANDIC, J., dissenting.

Michael Resis, Ellen Martin and Glen E. Amundsen, of Querrey & Harrow, Ltd., of Chicago, for appellants.

Rudolph F. Magna, of Magna & Hauser, of Gurnee, for appellee.

Robert H. Hanaford, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

Defendants, Eugene and Elizabeth Bauer, operated a horse training business located on an 80-acre farm in Wauconda Township, Lake County, along Callahan Road. In order to allow grazing, the pasture had fencing around the perimeter. Immediately outside the fencing was a training lane which was utilized almost every day. Defendants were aware of the fact that, over the years, numerous vehicles had left the travelled way while driving around the curve on Callahan Road and crashed through their fence. Accordingly, they asked the township to install a guardrail to protect themselves, their fence and the horses on their property. However, the township declined. Thus, the defendants constructed their own barrier which consisted of vertical posts with horizontal posts or logs running between the uprights. After constructing this barrier, defendants notified the Lake County highway department by letter that they had built a "barricade of large posts" on their property to stop drivers who failed to make the curve.

On May 30, 1986, the plaintiff, Michael Hutchings, and several of his friends were driving their motorcycles along Callahan Road. The speed limit for this area was 35 miles per hour, but the "advisory" speed limit as posted for the curve they were entering was 25 miles per hour. In order to warn motorists of the curve, sev-

eral signs were posted along the road, including: chevron signs, a sign indicating an upcoming bend in the road, and the advisory speed limit sign of 25 miles per hour. Plaintiff was negotiating the curve at a speed which he estimated to be 35 to 37 miles per hour when he hit some loose gravel, slid across the gravel shoulder for 10 or 15 feet, and then went onto the grass to the right of the shoulder where he travelled some 50 to 100 yards. Then, still upright and traveling on the grassy area at a speed between 15 and 20 miles per hour, plaintiff felt that he was still going too fast to safely turn back onto the road. Instead of either slowing or stopping, he decided to drive between two of the defendants' vertical posts. As plaintiff attempted to pass through the posts at a speed of about 15 miles per hour, he hit a horizontal log or post which ran between the vertical posts. Plaintiff was unable to see the log due to the grass which had grown up around it. As a result of striking the barrier, plaintiff sustained severe and permanent injuries.

Plaintiff, in a two-count complaint, alleged negligence and willful and wanton conduct on the part of defendants in constructing the barrier. Defendants moved for summary judgment arguing that they did not owe a duty to plaintiff. The trial court granted summary judgment to defendants. On appeal, the appellate court reversed the trial court, concluding that "it was reasonably foreseeable to defendants under the present facts that plaintiff would deviate from the road as he did in the normal incident of travel." (212 Ill. App. 3d 172, 179.) The issue in this case, however, is not foreseeability. The issue is duty. In other words, whether defendants, by erecting the barrier, breached a duty which they owed to plaintiff. We conclude that no duty was breached. Accordingly, we reverse the appellate court and reinstate the judgment of the trial court.

As this court noted in *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 522-23, while the foreseeability of an injury is an important factor in determining whether a duty exists, the existence of a legal duty is not to be bottomed on the factor of foreseeability alone. Instead, we must balance the foreseeability of the harm against the burdens and consequences that would result from the recognition of a duty. (See also *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375.) Similarly, both this court and the appellate court have considered other artificial conditions which were placed near roadways which, although foreseeable, did not give rise to a duty on the part of the landowner. (See *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535 (utility pole approximately 15 feet from the paved surface); *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180 (cement pillar two feet from roadway); *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721 (utility pole placed 12 to 16 feet from roadway); *West v. Faurbo* (1978), 66 Ill. App. 3d 815 (concrete block four or five feet off public sidewalk).) If foreseeability, standing alone, were sufficient to give rise to a duty, a landowner would be exposed to liability in every case, since the mere fact of injury means that the accident was foreseeable. In retrospect, everything is foreseeable.

Defendants had a right to operate their horse training farm and to take reasonable precautions to protect themselves, their fencing and their horses from incursions of motor vehicles over and across their land. The defendants were under no duty to dedicate and donate their land to the public without compensation for use as a travelled way. To hold otherwise would constitute a denial of substantive due process under our Federal and State Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, §2).

It is also to be noted that the barrier which the defendants constructed was a reasonable barrier. It was not designed to cause injury or harm. It was not a pit or a trap. Except for the bottom horizontal log which was obscured by tall grass, it was quite visible. It was intended solely to stop the movement of vehicles across the defendants' property for the protection of the defendants. It was not dangerous, save in the sense that it was a barrier. Needless to say, when a moving vehicle strikes any immovable or fixed object with sufficient force, some damage or injury from the collision would be expected, the extent of damage depending on a variety of factors including speed.

It is also to be noted that the plaintiff chose to drive his motorcycle around the curve at a speed 10 to 12 miles above the "advisory" speed limit posted for the curve. Then, after sliding off the travelled way and driving for some 50 to 100 yards on the grassy area, he chose to drive his bike between the defendants' posts rather than to slow or stop his bike before returning to the travelled way. As already noted, the defendants had a right to construct the barrier. The plaintiff had no right to drive across the defendants' land.

Accordingly, we reverse the decision of the appellate court and reinstate the judgment of the trial court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE FREEMAN, specially concurring:

I agree with the conclusion reached in this case. I write separately to address what I believe are valid concerns raised in the dissent regarding the analysis used in reaching that conclusion. Additionally, I think it important to address the unreasonable burden which would be placed upon owners of land adjacent to a highway if the duty owed to travelers deviating therefrom was ex-

tended to include the type of deviation and condition encountered here.

Foreseeability of the harm resulting from an action, as the dissent correctly notes, is one of the factors to be weighed in determining, as here, the scope of an existing duty owed or the existence of a duty based on a new relationship. (See M. Polelle & B. Ottley, Illinois Tort Law 396 (1985).) Although none of the factors is independently determinative of duty, the factor of foreseeability is most frequently cited in determining the issue. (See M. Polelle & B. Ottley, Illinois Tort Law 397 (1985).) That is so because, as the dissent also correctly notes, existence of a legal duty is "inextricably linked" to the issue of foreseeability of the harm caused. More accurately, however, duty is understood properly to be but a term used to state a conclusion as to whether a defendant should be held responsible for the consequences of his own negligent acts. W. Keeton, Prosser & Keeton on Torts §43, at 281 (5th ed. 1984).

As it relates to duty, foreseeability, in both the abstract and in application to a particular set of facts, remains a troublesome concept. (See W. Keeton, Prosser & Keeton on Torts §43, at 281 (5th ed. 1984); *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042.) In hindsight, everything is foreseeable. (*Lance v. Senior* (1967), 36 Ill. 2d 516.) For that reason, the question of foreseeability is best answered when approached as a matter of fundamental policy in the law. (See W. Keeton, Prosser & Keeton on Torts §43, at 281 (5th ed. 1984).) The question then becomes whether such policy is fostered by holding the owner of land adjacent to a public highway responsible for injury to a traveller deviating therefrom where the injury is caused by a structure on the land intended to prevent such deviation and so to promote use and enjoyment of the property.

Section 368 of the Restatement (Second) of Torts aids in that analysis, returning us to concerns of foreseeability. Section 368 provides that an adjacent property owner should be so responsible when the deviation is foreseeable in the ordinary course of travel. (Restatement (Second) of Torts §368 (1965).) Official comments *e* and *h* of section 368 indicate that the concern is twofold. Courts should examine whether the owner of the land, as a reasonable person, would expect travelers to deviate from the highway in the ordinary course of travel. (Restatement (Second) of Torts §368, Comment *e*, at 269-70 (1965).) If so, courts must also consider whether the condition on the property causing injury is so placed that those travelers, in the course of that ordinary deviation, would come into contact with it. Restatement (Second) of Torts §368, Comment *h*, at 271 (1965).

Given that defendants here were aware of numerous incidents of deviations from the portion of Callahan Road at issue, the central concern is what could reasonably be expected to occur given the placement of the barrier. To that end, comment *h* advises that "[d]istance from the highway is frequently decisive," because travelers deviating "in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far." Restatement (Second) of Torts §368, Comment *h*, at 271 (1965).

The barrier here was placed approximately 15 to 20 feet in from the edge of defendants' property line abutting Callahan Road. That distance is significant, and the particular facts here serve to underscore why that is so. After sliding off of the paved portion of Callahan Road, plaintiff travelled a considerable distance over the gravel road shoulder and a grassy area before encountering the barrier. Plaintiff was able to reduce his speed to 15 to 20 miles per hour by the time he was within 15 feet of the barrier. However, instead of attempting to "lay" the mo-

torcycle down, plaintiff made a conscious decision to travel farther onto defendants' property by steering between two of the barriers' vertical posts. The point of impact was at least 21 feet from the edge of Callahan Road and at least 150 feet from the point plaintiff first left the pavement.

Although what constitutes a normal deviation in the ordinary course of travel must depend on the circumstances of any given case, plaintiff's deviation is not of a type of normal deviation incident to travel contemplated by section 368. The illustrations in the Restatement as to when a duty might exist concern conditions "immediately adjacent to," "within a few inches of," or within two and three feet of the public way. (Restatement (Second) of Torts §368, Illustrations 1, 2, at 270-71 (1965).) Those illustrations do not suggest that liability could be established when a plaintiff makes a conscious decision to extend the deviation from the highway and the deviation, itself, is of such considerable distance as here.

The facts of this case are analogous to those considered by the appellate court in *West v. Faurbo* (1978), 66 Ill. App. 3d 815, cited in the majority opinion. In an attempt to avoid a collision with an on-coming vehicle, the minor plaintiff consciously swerved his bicycle off of a sidewalk into a yard in front of defendant's tavern, striking a cement block obscured from sight by grass. The appellate court, I believe, properly rejected plaintiff's theory of liability against defendant as the owner of land adjacent to a highway on the basis that plaintiff's deviation of four to five feet from the sidewalk was not a normal deviation incident to travel. *West*, 66 Ill. App. 3d at 818.

Defendants here erected the barrier specifically to prevent vehicles from straying from Callahan Road, aware as they were that vehicles had done so in the past. But accepting that such awareness translates into foreseeability which, alone, would be sufficient in any case to establish

liability for a plaintiff's injuries, would work a peculiar type of justice. As was also noted in the dissent and special concurrence to the appellate court's decision in this case, such foreseeability could give rise to a duty of landowners to erect a barrier in order to protect persons lawfully on their property from vehicles straying from an adjacent highway. (212 Ill. App. 3d at 185 (Reinhard, P.J., dissenting in part & specially concurring in part).) It would be unfair, if not legally impossible, to impose, upon such owners, both a duty to erect and not to erect a barrier on the property at the same time. (212 Ill. App. 3d at 185 (Reinhard, P.J., dissenting in part & specially concurring in part).) I would note, parenthetically, that that point is made without regard to negligence in the actual placement of the barrier. Consideration of the location of a barrier, as in this case, is inherently at issue in determining the scope of the existing duty that the law already recognizes is owed by owners of property adjacent to a highway to travelers deviating therefrom.

Apart from the issue of foreseeability, establishment of liability in cases like the one here would place an unreasonable burden upon landowners. (See 212 Ill. App. 3d at 185 (Reinhard, P.J., dissenting in part & specially concurring in part).) Such cases illustrate that public policy (see *Lance v. Senior* (1967), 36 Ill. 2d 516) requires that a traveler's right of action against the owner of land adjacent to a highway must be balanced against consideration of the owner's right to use and enjoy that property. It is plain to me why liability should exist based on the types of deviations and proximity of conditions on property adjacent to the public way as illustrated in section 368. What concerns me is that extension of protections beyond those minor deviations and closely situated conditions works directly to limit a landowner's right to freely make use of the whole of his property. That may seem a small concern here given the expanse of property owned by defendants and the abil-

ity to move the barrier farther into their property away from the highway. I would be reluctant, however, to join in a holding that might impose a new scope of duty on urban landowners who are not able, because of space limitations, to insulate themselves from liability by moving structures in from their property lines. (See 212 Ill. App. 3d at 185-86 (Reinhard, P.J., dissenting in part & specially concurring in part).) Owners of land adjacent to a highway are not, by virtue of that fact, the insurers of the safety of all who deviate from travel on the public way. Notwithstanding the scope of duty owed by such landowners as contemplated by section 368, safe travel upon highways must remain a matter of concern for the State or particular municipality involved. See 212 Ill. App. 3d at 185 (Reinhard, P.J., dissenting in part & specially concurring in part).

JUSTICE CUNNINGHAM joins in this special concurrence.

JUSTICE CLARK, dissenting:

Because I believe the majority opinion fails to properly analyze the issue in this case and apply the relevant case law, I respectfully dissent.

The majority opinion states:

"The issue in this case, however, is not foreseeability. The issue is duty. ***

*** Similarly, both this court and the appellate court have considered other artificial conditions which were placed near roadways which, although foreseeable, did not give rise to a duty on the part of the landowner. [Citing *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535; *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180; *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721; *West v. Faurbo* (1978), 66 Ill. App. 3d 815.] If foreseeability, standing alone, were sufficient to give rise to a duty, a landowner would be exposed to liability in every case, since the

mere fact of injury means that the accident was foreseeable. In retrospect, everything is foreseeable." 149 Ill. 2d at 570-71.

In my opinion, the above quotation misstates the law and mischaracterizes this court's consistent interpretation of the word "foreseeability." As the majority opinion correctly notes, in considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.) In terms of foreseeability, *the court will consider whether the risk of harm to the plaintiff was reasonably foreseeable.* (*Cunis v. Brown* (1974), 56 Ill. 2d 372, 376.) Consequently, I feel it is incorrect to say, as the majority does, that "[t]he issue in this case, however, is not foreseeability. The issue is duty." (149 Ill. 2d at 570.) The case law in Illinois has repeatedly recognized that the issue of whether a duty exists is inextricably linked to the question of the foreseeability of the injury. See *Gouge,* 144 Ill. 2d 535; *Kirk,* 117 Ill. 2d 507; *Cunis,* 56 Ill. 2d 372; *Lance,* 36 Ill. 2d 516.

Moreover, I believe that saying "both this court and the courts below have considered other artificial conditions which were placed near roadways which, although foreseeable, did not give rise to a duty on the part of the landowner" (149 Ill. 2d at 571) again misinterprets the important question of foreseeability and fails to properly analyze the cited cases. I do not believe it is important whether the artificial condition placed near the roadway was foreseeable, *but rather whether it was reasonably foreseeable that the plaintiff would deviate from the roadway in the ordinary course of travel and strike this artificial condition.* Further, contrary to the majority opinion's belief (see 149 Ill. 2d at 571), this court found in *Gouge* that it was

not reasonably foreseeable that the plaintiff would deviate from the roadway in the ordinary course of travel and strike the utility pole. See *Gouge*, 144 Ill. 2d at 545 (stating that "plaintiffs have alleged no facts in their complaint, nor are any facts apparent, which would indicate that it was reasonably foreseeable that Gouge would deviate from [the roadway] and strike this utility pole").

In analyzing whether the defendants, Eugene and Elizabeth Bauer, owed the plaintiff, Michael Hutchings, a duty in this case, the appellate court relied extensively on section 368 of the Restatement (Second) of Torts, which involves the liability of owners or occupiers of land for artificial conditions created thereon which cause injury to travelers on an adjacent highway. Section 368 states:

> "A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while travelling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are travelling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts §368 (1965).

The appellate court also quoted the official comments to the Restatement, which bear repeating here:

> "[The rule] applies also to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the normal incidents of travel. ***

\* \* \*

In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully travelling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come in contact with it in the ordinary course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far. \*\*\* Distance is important, however, only as it affects the recognizable risk; and other factors such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." Restatement (Second) of Torts §368, Comments *e*, *h*, at 269-71 (1965).

The appellate court, after reviewing the record in light of section 368, held that it was reasonably foreseeable that the plaintiff would deviate from the road as he did as a normal incident of travel. (212 Ill. App. 3d at 179.) To buttress its conclusion, the appellate court stressed that the defendants were well aware that vehicles left Callahan Road at the curve and entered their property. Specifically, at the time of Eugene Bauer's deposition in 1988 (plaintiff's accident occurred in May 1986), Eugene Bauer was aware of "far more" than 50 incidents in which vehicles left Callahan Road and entered his property. 212 Ill. App. 3d at 179.

The appellate court also concluded that the likelihood of injury to the plaintiff was obvious given that the defendants chose to install a barrier with "very sizable posts" which were "well into the ground." (212 Ill. App. 3d at 180.) In terms of the magnitude of guarding against this injury and the consequence of placing that burden on the defendants, the appellate court reasoned that the burden and the attendant consequences on the defendants were relatively small. Specifically, the appellate court argued

that the defendants could have used "softer barriers of a break-away type," or they could have posted a warning on the horizontal beams to give notice to passing motorists. 212 Ill. App. 3d at 180-81.

The appellate court conducted a very thorough, and in my view correct, analysis of whether the defendants in this case owed a duty to the plaintiff, Michael Hutchings. The appellate court properly analyzed the issue in this case, and cited the relevant case law in reaching its decision. In my view, the majority opinion has failed to conduct as thorough an analysis. I believe that it misstates Illinois law regarding "foreseeability," and does not rely on, cite to, or in any way distinguish section 368 of the Restatement (Second) of Torts. Although section 368 has never been expressly adopted as a rule of law in Illinois, several cases have cited it as persuasive authority. See *Gouge*, 144 Ill. 2d 535; *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 48; *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180; *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335; *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721.

Because I do not believe the majority opinion has conducted a proper and thorough analysis of the issue in this case, *i.e.*, weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendants, I respectfully dissent.

CHIEF JUSTICE MILLER and JUSTICE BILANDIC join in this dissent.

CHIEF JUSTICE MILLER, also dissenting:

I join Justice Clark's dissent. I write separately to discuss briefly several other aspects of this case that the majority opinion overlooks.

The present accident occurred when the plaintiff, having failed to make a turn on an adjacent road, attempted to maneuver his motorcycle between two upright posts on the defendants' land. The plaintiff was unable to pass between those barriers and instead struck two logs, each about 10 to 12 inches in diameter, that were positioned on the ground in tall grass between the posts. In his complaint the plaintiff alleges, among other things, that the defendants breached their duty of care by permitting the logs to become hidden from view and by failing to provide any warning of their presence. The trial judge granted the defendants' motion for summary judgment (see Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), and it is in this procedural posture that the case comes before us.

The purpose of summary judgment, of course, is not to try an issue of fact, but to determine whether one exists. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-58.) In deciding whether summary judgment is appropriate in a particular case, the pleadings, affidavits, and other documents on file must be construed strictly against the movant and liberally in favor of the opponent, and the remedy may be allowed only when the movant's right to judgment is free from doubt. (*Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 74, 80-81; *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 214-15.) An order granting summary judgment must be reversed if the reviewing court finds a genuine issue of material fact. *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31.

No one would quarrel with the majority's statement that the defendants were entitled to take reasonable precautions to protect themselves and their property from passers-by. (149 Ill. 2d at 571.) But this principle does not mean that a landowner may with impunity set traps for those who happen to stray from the public way and onto private property. Whether the defendants' barrier

was a reasonable one is in this case a question of fact, and thus I do not believe that summary judgment was appropriate here.

The plaintiff alleges that the defendants breached their duty of care by erecting and maintaining the wooden barrier in such a way that he could not detect the presence of the large logs lying between one vertical post and the next. In this case, the defendants had notice of numerous occasions on which vehicles left the adjacent highway and traveled onto their land. When the local township failed to correct the problem to the defendants' satisfaction, the defendants decided to institute their own measures to prevent those incidents from recurring. Whether the defendants were warranted, however, in attempting to teach errant passers-by "a lesson" by designing and maintaining what is alleged to be a deceptive barrier should, in these circumstances, be a question for the trier of fact. Distance of the barrier from the road is not the sole determinant in assessing the reasonableness of the defendants' conduct; other things as well must be taken into account, including "the nature of the condition itself, its accessibility, and the extent and character of the use of the highway." (Restatement (Second) of Torts §368, Comment *h*, at 271 (1965).) When all these matters are considered, I believe the record before us presents a genuine issue of material fact.

For these reasons, and for the reasons stated in Justice Clark's separate dissent, I would affirm the judgment of the appellate court, which reversed the order granting the defendants' motion for summary judgment and remanded the matter for further proceedings.