**CITY OF McALLEN, Petitioner,**

v.

**Angel DE LA GARZA and Alma De La Garza, Respondents.**

No. 94–1139.

Supreme Court of Texas.

May 25, 1995.

Robert L. Galligan and Todd A. Clark, Weslaco, for petitioner.

Servando H. Gonzales, Jr. and Ricardo A. Ramos, McAllen, for respondents.

OWEN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HIGHTOWER, HECHT, GAMMAGE, and ENOCH, Justices, join.

This case presents the question whether the owner of a caliche pit has a duty to make the pit safe for or to warn those who are not traveling with reasonable care upon the adjoining highway. We hold there is no duty.

On May 27, 1989, Robert Garza and his sixteen-year old passenger Aaron De La

Garza were traveling on a straight, two-lane, paved road, twenty-two feet wide, with unimproved shoulders and no center stripe. A caliche pit approximately thirty feet deep abuts this road, and in some places is within ten feet of the road. The original owner of the pit had piled mounds of dirt six to eight feet high parallel to the roadway as a barrier. In 1977, the City of McAllen purchased the pit for use as a landfill. It was alleged that the City removed or failed to maintain the dirt embankment. The highway was bordered by a wire mesh fence where the accident occurred.

On the night of the accident, the blood alcohol content of Robert Garza, the driver, was .11 and that of Aaron De La Garza was .10. It is undisputed that Robert Garza blacked out or fell asleep at the wheel, veered from the right lane across the left lane onto the adjoining land, and traveled a distance of forty feet before applying the brakes. The vehicle continued to travel another 100 feet before hitting the wire fence and shearing off seven fence poles. The vehicle then went over the crest of the dirt embankment, the left tires leaving the ground and the right tires and bottom frame holding the vehicle to the ground on the side of the mound. The vehicle traveled another 110 feet, leaving skid marks, before becoming airborne and colliding with a small tree. The car came to rest upside down at the bottom of the caliche pit, which had a depth of twenty-nine feet at that point.

Aaron De La Garza, who was not wearing a seat belt, was thrown from the car and killed. Robert Garza survived. De La Garza's parents sued the City for wrongful death, alleging that it was negligent and grossly negligent in failing to make a dangerous condition safe and by failing to warn travelers of that dangerous condition. The trial court granted the City's motion for summary judgment. The court of appeals reversed and remanded for a new trial, concluding that the City had failed to establish as a matter of law that it owed no duty to De La Garza. 881 S.W.2d 599, 605.

■■■ The existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in ques-

tion. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The City relies upon *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189 (Tex.App.—San Antonio 1988, writ denied), in support of its argument that it owed no legal duty to Aaron De La Garza. The court of appeals failed to find *Naumann* controlling, holding that "[t]he issue in the instant case is whether the risk of injury was foreseeable to impose a duty on the City." 881 S.W.2d at 604. In reversing the summary judgment, the court of appeals stated that "[b]y our ruling today, we do not impose a duty upon owners of property adjoining roadways to erect barriers to protect intoxicated drivers from injuring themselves or others." In spite of this assertion, the effect of the ruling of the court of appeals is to impose precisely such a duty and in essence to equate "foreseeability" with duty.

This Court has previously considered the legal duty owed by a landowner to those who deviate from an adjoining roadway onto the landowner's property. *City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954 (1945). However, in that case, the excavation existed *before* the nearby street was dedicated and constructed. Our Court relied upon section 368 of the Restatement (First) of Torts in holding that the entity charged with the responsibility for maintaining a roadway, rather than an adjacent landowner, owes a duty to a third party injured by a dangerous condition on adjoining land if the condition was in existence at the time the highway was created. *Id.* 186 S.W.2d at 957. While the Court in *City of Fort Worth* was not called upon to decide the issue, section 368 of the Restatement (First) does address the situation in which a traveler deviates from a pre-existing roadway and encounters an excavation. Section 368 imposes a duty only when the injured party was traveling with reasonable care on the highway when the deviation occurred.

The Restatement (Second) of Torts subsequently refined the duty owed by a possessor of land under section 368, which this Court quoted with approval in *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 911 n. 3 (Tex.1981). In that case, the issue was the

duty owed by the landowner to those who were traveling on the adjoining street but did *not* deviate from the street. The bank was in the process of demolishing a building when an unsupported wall fell on and killed a motorist in a passing car. This Court held that the owner or occupant of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage. *Id.* at 910. *See also Atchison v. Texas & P. Ry. Co.*, 143 Tex. 466, 186 S.W.2d 228, 229 (1945), where this Court applied the same standard of care and upheld the trial court's findings that the railroad negligently permitted grass, weeds, and other vegetation to grow and remain on its right of way in a highly combustible state, leading to a fire and to a resulting collision on the adjoining roadway due to the smoke.

In defining the duty owed under these circumstances, we find section 368 of both the First and Second Restatement, relied upon by our Court in other contexts, determinative. Under section 368 of the First Restatement, an adjoining landowner who maintains an excavation would be liable only to those who were "traveling with reasonable care upon the highway" at the time the deviation occurred. Under section 368 of the Second Restatement, an adjacent landowner who permits an excavation to remain on the property owes a duty only to those who were traveling with reasonable care upon the highway *and* who foreseeably deviated from it *in the ordinary course of travel.* Section 368 of the Restatement (Second) provides:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway, or
> (b) foreseeably deviate from it in the ordinary course of travel.

RESTATEMENT (SECOND) OF TORTS § 368.

Comment g to section 368 of the Restatement (Second) explains the concept of "in the ordinary course of travel":

> [T]he rule stated in this Section does not apply where the traveler intentionally deviates from the highway for a purpose not reasonably connected with travel upon it. It does not apply, for example, where he intentionally and unnecessarily takes a short cut cross the land, or steps out of the street to look at something in a window. Likewise this Section has no application where the deviation is one not reasonably to be anticipated, or is for a purpose not normally connected with the travel, as where the traveler runs off of the highway when pursued by criminals seeking his life. The distinction is thus not between inadvertent and intentional deviations, but between those which are normal incidents of travel and those which are not.

RESTATEMENT (SECOND) OF TORTS § 368 cmt. g. Thus, a traveler is not "in the ordinary course of travel" unless the deviation from the road is a normal incident of travel.

Other courts, faced with a variety of factual situations, have found the rationale of section 368 of the Restatement Second persuasive in defining the duty owed by a landowner to those who come into contact with his or her property after deviating from an adjoining road. *See Cooper v. Unimin Corp.*, 639 F.Supp. 1208, 1214 (D.Idaho 1986) (owner of sand pit owes no duty to trespasser who left roadway to urinate because such a deviation is not in the ordinary course of travel); *Collier v. Redbones Tavern & Restaurant, Inc.*, 601 F.Supp. 927, 930–31 (D.N.H.1985) (erratic and uncontrolled deviation by drunken and speeding driver is not a normal incident of travel); *Seward v. Terminal R.R. Ass'n of St. Louis*, 854 S.W.2d 426 (Mo.1993) (en banc) (trespasser injured when stepping into ventilation abutment on side of railway to relieve himself was not deviating from highway in the ordinary course of travel); *Hutchings v. Bauer*, 149 Ill.2d 568, 174 Ill.Dec. 850, 599 N.E.2d 934 (1992) (legal duty is not bottomed on foreseeability; no duty owed by landowners who constructed barrier to protect their property when motorcyclist lost control, struck barrier and was injured); *Swope v. Northern Illinois Gas Co.*, 251 Ill.

App.3d 850, 191 Ill.Dec. 251, 623 N.E.2d 841 (1993), *appeal denied*, 154 Ill.2d 570, 197 Ill.Dec. 497, 631 N.E.2d 719 (1994) (it was foreseeable that truck might swerve to miss deer and collide with embankment ten feet from the road, but this was not the type of accident one would expect under normal driving conditions); *Kavanaugh v. Midwest Club, Inc.*, 164 Ill.App.3d 213, 115 Ill.Dec. 245, 517 N.E.2d 656 (1987) (no duty owed to driver who had epileptic seizure, left highway and traveled into retention pond where he drowned, even though it was foreseeable vehicle could leave the highway and enter the pond); *Battisfore v. Moraites*, 186 Ill.App.3d 180, 133 Ill.Dec. 938, 944, 541 N.E.2d 1376, 1382 (1989) (fact that it may be foreseeable that other travelers might come into contact with cement blocks on landowner's property does not create duty in favor of plaintiff whose deviation from highway was not in the ordinary course of travel); *Florida Power & Light Co. v. Macias*, 507 So.2d 1113 (Fla. App.1987) (no duty owed by utility company to driver who lost control of his car and hit utility pole, even though plaintiff alleged there were seventeen other accidents involving defendant's poles in the same area); *Scott v. Chevron U.S.A.*, 5 Cal.App.4th 510, 6 Cal.Rptr.2d 810 (1992) (foreseeability not commensurate with duty where state placed guardrail on shoulder of highway to shield Chevron's pipeline equipment and driver contends he veered into oncoming traffic after he drifted off road and bounced off guardrail).

Under the rationale of section 368 of both the First and Second Restatements, the City did not owe a duty to De La Garza as a matter of law. He was not traveling with reasonable care upon the highway nor was his deviation in the ordinary course of travel. We do not reach the issue as to whether the deviation from the road and ultimately into the caliche pit was "foreseeable." We hold that "foreseeable" or not, no duty was owed by the City under the circumstances of this case.

Accordingly, pursuant to Rule 170 of the Texas Rules of Appellate Procedure, without hearing oral argument, a majority of this court reverses the judgment of the court of appeals and renders judgment that the respondents take nothing.

SPECTOR, Justice, noted her dissent.

CORNYN, Justice, dissenting.

The Court's resolution of this case is misguided both procedurally and substantively. Procedurally, the issue presented is not clear enough to resolve without the benefit of oral argument. Substantively, the Court confuses the issue of duty with the issue of responsibility as determined under our rules of comparative negligence. Accordingly, I dissent.

Texas Rule of Appellate Procedure 170 provides that the Court "may determine that causes should be submitted without oral argument, upon the vote of at least six members." Although the issuing of opinions without oral argument is essential to the Court's ability to meet the demands of its docket, the procedure should be used sparingly, and should be reserved for questions controlled by clear Supreme Court authority or plain application of statutes or the Rules of Civil or Appellate Procedure.

Today the Court resolves in summary fashion an issue on which the Court has never spoken. It distinguishes the one case that arguably controls the analysis, *City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954 (1945), and bases its holding on sections of the RESTATEMENT OF TORTS, Texas cases relying on those sections "in other contexts," and decisions of other states. 898 S.W.2d at 811. Although these are all legitimate sources of authority, and although the Court's opinion demonstrates the legal craft of drawing on disparate sources to explain its reasoning, such a process is inappropriate in this case without the consideration and careful study attendant full submission.

As for the Court's resolution of the substantive question presented, I believe the Court errs by holding that the City has no duty as a matter of law "to warn those who are not traveling with reasonable care upon the adjoining highway." 898 S.W.2d at 811. The driver's conduct is a question for the jury to consider under the comparative responsibility statute, TEX.CIV.PRAC. & REM.

CODE § 33.001, and *City of Fort Worth v. Lee,* in my opinion, defines the duty to be obeyed. I agree with the court of appeals that "[w]hile this evidence [that the driver was intoxicated] may prove dispositive at trial, it fails to prove, as a matter of law, that the City owed no duty to De La Garza as a traveler on the abutting roadway." 881 S.W.2d at 605.

For the reasons highlighted above I would deny the application for writ of error, and therefore dissent from the Court's opinion.