

# MEMORANDUM OPINION

No. 04-08-00490-CV

Barbara Jean **FOREMAN** and Steven Carl Foreman, Individually
and as Representatives of the Estate of Courtney Rae Foreman,
Appellants

v.

**ALLEN KELLER COMPANY**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 11,331
Honorable Stephen Ables, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   August 31, 2009

REVERSED AND REMANDED

        This is an appeal from a summary judgment in favor of the defendant, Allen Keller Company,

in a premise liability case. We reverse the judgment and remand the cause to the trial court.

## BACKGROUND

Barbara Jean Foreman and Steven Carl Foreman brought this wrongful death and survival action after their daughter Courtney Foreman drowned when the car in which she was a passenger left Old San Antonio Road and slid into the Pedernales River. The Foremans sued Allen Keller Company ("Allen Keller"), alleging it created an unreasonably dangerous condition that proximately caused Courtney's death.

The bridge where the accident occurred is owned and maintained by Gillespie County. Approaching the bridge from the south, the Old San Antonio Road makes a sharp left-hand turn as it descends towards the river. Before June 2003, there was a fairly steep embankment on the right side of the road along the curve on the approach to the bridge. There was a short guardrail extending from the southeast corner of the bridge to the embankment. There was a small gap of five feet or less between the guardrail and the embankment – not wide enough for a car to pass through.

In 2003, Gillespie County contracted with Allen Keller to perform flood and erosion control work at the bridge where the accident occurred. Among other things, the contract called for the construction of a concrete pilot channel to reroute drainage from the roadside into the river at a point away from the concrete headwalls of the bridge. The plans called for the channel to be five feet wide, with five feet of stabilized earth fill on each side of the channel. In performing the contract, Allen Keller excavated at least twenty cubic yards of earth from the embankment along the right side of the road at the curve. After Allen Keller completed its work, a five-foot wide concrete channel, with five feet of stabilized fill on either side, led from the road to the riverbank. The old guardrail remained; however, the gap between the guardrail and the embankment was now approximately

fifteen feet wide. Allen Keller completed its work in June 2003. The work was inspected and accepted by the County, and it paid Allen Keller for the work.

On a rainy evening in January 2004, Courtney Foreman was traveling on Old San Antonio Road with her boyfriend, Jim Robbins, and a friend, Garrett Mills. Robbins, who was not familiar with the road, was driving. As he was negotiating the turn on the approach to the bridge, his tires slid on dirt or gravel on the wet road. Instead of completing the curve to the left and crossing the bridge, the car slid forward, skidded off the road, and slid along the pilot channel to the riverbank. The car had almost stopped when it reached the bank, but then slowly slid over the edge into the river through the newly created gap between the end of the guardrail and the embankment. Robbins and Mills were able to exit the car, but Courtney was not, and she drowned.

The Foremans filed suit against multiple defendants, alleging premise defect and negligence claims. Only their premise defect claim against Allen Keller remains. After discovery, Allen Keller filed both a traditional and a no-evidence motion for summary judgment on grounds it owed no duty, it did not breach any duty, and its actions did not proximately cause Courtney's death. The trial court granted summary judgment without stating its reasons. The Foremans appeal.

### STANDARD OF REVIEW

We review a summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the movant established there are no genuine issues of material fact and it is entitled to judgment as a matter of law on the grounds expressly set forth in the motion. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). We will affirm a judgment based on a no-evidence motion if the non-movant failed to present more

than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In our review, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the evidence in favor of the nonmovant. *Science Spectrum, Inc. v.* Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

## DISCUSSION

### *Duty*

In its traditional motion for summary judgment, Allen Keller contended it owed the Foremans no duty as a matter of law because (1) "the accident in question did not occur on premises owned, occupied or controlled by Allen Keller," and (2) it performed the work in accordance with the contract and the work was accepted by the county. The Foremans alleged Allen Keller was liable for creating a dangerous condition on premises adjacent to the highway and failed to make it safe. Under Texas law, one who creates a dangerous condition may owe a duty to make the premises safe, even if he is no longer in control of the property at the time of the injury. *Lefmark Management Co. v. Old*, 946 S.W.2d 52, 534 (Tex. 1997); *Science Spectrum*, 941 S.W.2d at 912. An independent contractor who has created a dangerous condition on real property is not relieved of any duty of care to the public merely because his work is accepted or because his contract did not require him to do the work required to make the premises safe. *Strakos v. Gehring*, 360 S.W.2d 787, 790-94 (Tex. 1962). Because Allen Keller's motion did not address whether it created a dangerous condition, it was not entitled to a traditional summary judgment on the ground it owed no duty.

Allen Keller also sought a no-evidence summary judgment on the duty element. An independent contractor who is put in control of the premises by the owner is under the same duty as the owner. *City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986). One in control of land adjacent to a highway who creates an excavation or other artificial condition that poses an unreasonable risk to users of the highway owes a duty to those who encounter the condition after traveling with reasonable care on the highway and foreseeably deviating from the highway in the ordinary course of travel. *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 570 (Tex. 2005); *City of McAllen v. De La Garza*, 898 S.W.2d 809 (Tex. 1995); RESTATEMENT (SECOND) OF TORTS § 368 (1965). In determining whether a deviation is reasonably to be expected in the ordinary course of travel, we consider factors such as the distance between the highway and the condition, the character and use of the highway, and the nature and accessibility of the condition. *Morin*, 156 S.W.3d at 573; RESTATEMENT (SECOND) OF TORTS § 368, cmt. h (1965). To defeat Allen Keller's no evidence motion with respect to whether a duty was owed, the Foremans were required to present more than a scintilla of evidence that Robbins was driving with reasonable care and that his leaving the roadway was a foreseeable deviation in the ordinary course of travel.

There is no posted speed limit on the relatively straight portion of Old San Antonio Road leading to curve. The Texas Department of Public Safety officer's accident report states the speed limit was therefore fifty-five miles per hour. Robbins and Mills testified that because of the wet conditions, Robbins was driving between twenty-five and thirty-five miles per hour on that portion of the road. At the top of the hill, just before the curve leading down to the bridge, were signs indicating a left curve ahead and posting a speed limit of twenty miles per hour. Robbins testified

he had slowed down to about twenty-five miles per hour when he saw the sign indicating the left curve. He testified he continued to slow down as he got to the curve, and had his foot on the brake as he went into the curve. Robbins stated the car started sliding and it felt as if it was skidding on pebbles or gravel. Robbins turned the steering wheel, but instead of turning left, the car slid forward, off the road. Robbins and Mills both testified the car was moving very slowly as it left the road, and they thought it was going to stop.

Robbins testified he did not recall ever having driven that portion of Old San Antonio Road before the night of the accident. However, the summary judgment evidence includes the testimony of witnesses who use the country road regularly and are familiar with its conditions. They testified that sand, dirt, and gravel regularly migrate across the road and accumulate on it. Although the sign at the top of the hill advises slowing to twenty miles per hour for the curve, one local resident testified he takes the curve at two miles per hour because of its danger. During wet conditions, the road becomes very muddy and slick, especially at the curve. Larry Casbeer, who lives on the hill above the bridge, testified he previously had seen cars slide off the road at the curve. In the past, however, vehicles simply slid into the embankment.

After reviewing the record as a whole and viewing the summary judgment evidence in the proper light and applying all reasonable inferences in favor of the nonmovant, we hold there is more than a scintilla of evidence that Robbins foreseeably deviated from the roadway in the ordinary course of travel and while driving with reasonable care. Accordingly, Allen Keller was not entitled to summary judgment on no duty grounds.

### *Breach*

The Foremans next contend they produced summary judgment evidence raising a genuine issue of material fact about whether Allen Keller breached its duty. Allen Keller excavated the natural barrier between the road and the river and opened a fifteen-foot wide pathway directly from the curve in the road to the river. Casbeer testified it appeared to him Allen Keller was building a "boat ramp" from the road to the river. He testified he asked the workers whether they were going to put up a guardrail, and got the impression they were not. Casbeer told Allen Keller's employees it "was an accident waiting to happen." Allen Keller's principal, Kory Keller, testified he recognized the resulting gap between the pre-existing guardrail and the embankment was large enough for a car to travel through. We hold the Foremans produced sufficient evidence to raise a material fact question on the issue of whether Allen Keller created a condition that posed an unreasonable risk to users of the roadway accidentally brought into contact with it and failed to make it safe.

### *Proximate Cause*

The final ground for Allen Keller's motion for summary judgment was that lack of proximate cause was established as a matter of law or, alternatively, there was no evidence Allen Keller's acts or omissions proximately caused Courtney's death. Specifically, Allen Keller argued there was no evidence of the cause-in-fact prong of proximate cause. Cause-in-fact is shown if the act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 277 (Tex. 1995). Had Allen Keller not excavated the embankment, the car would have slid into the embankment and, perhaps, the pre-existing guardrail. Before Allen Keller's work, there was insufficient space between the guardrail

and the embankment for a car to go into the river. Robbins and Mills both testified the car had almost stopped when it reached the river bank. Robbins felt "sure" an extended guardrail would have stopped the car from going into the water. Kory Keller agreed in his deposition that an extended guardrail could have prevented Courtney's drowning. The Foreman's engineering expert stated in his report that "the closing of the opening between the bridge and the near vertical embankment with an anchored guardrail system would provide retention of low-speed vehicles negotiating this sharp 20 mph curve." The Foremans produced some evidence from which a fact finder could reasonably conclude Allen Keller's removal of the embankment and failure to install an effective replacement barrier between the roadway and the river was a substantial factor in bringing about Courtney's foreseeable drowning death. Accordingly, Allen Keller was not entitled to summary judgment on the ground there was no proximate cause.

For the reasons stated above, we reverse the judgment of the trial court and remand the cause to that court for further proceedings.


Steven C. Hilbig, Justice